UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ESGUERRA-AGUILAR, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SHAPES FRANCHISING, LLC, et al.,<br><br>　　　　　Defendants. | Case No.  20-cv-00574-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING ARBITRATION**<br><br>[Re: ECF 13] |

Plaintiffs Esguerra-Aguilar, Inc. and Avi Minkoff bring this action against their former franchisor, Shapes Franchising, LLC ("Shapes"), and four individuals, Rory O'Dwyer, David Schaefers, Debbie Harris, and Scott Weber ("Individual Defendants"). Plaintiffs' claims arise from Defendants' alleged misrepresentations to induce Plaintiffs to enter into franchise relationships with Shapes. Before the Court is Defendants' Motion to Stay the Proceedings Pending Arbitration ("Motion"). ECF 13. The Court heard oral arguments on May 28, 2020. For the reasons stated below, Defendants' Motion is GRANTED.

**I.　BACKGROUND**

Plaintiff Esguerra-Aguilar, Inc. ("Esguerra-Aguilar") is a California corporation. Compl. ¶ 4, ECF 1. Plaintiff Avi Minkoff is an individual and a citizen of California. *Id.* ¶ 5. Shapes is a franchisor of fitness and weight loss centers to various individuals and businesses. *Id.* ¶ 24. The Shapes business model is built around franchisees operating Shapes® Clubs, which offer women's only fitness centers with focused group classes and training, individual personal training, and other fitness products and services. *Id.* Defendant Rory O'Dwyer is the Chief Executive Officer of Shapes. *Id.* ¶ 7. Defendant David Schaefers is a founder and the former Chief Operating Officer of Shapes. *Id.* ¶ 8. Defendant Debbie Harris is also a founder and the former President of Shapes. *Id.* ¶ 9. Defendant Scott Weber is a member of the Shapes Board of Managers, and General Counsel

to Shape. *Id.* ¶ 10. All four Individual Defendants allegedly "acted as [] Shapes® principal officers and directors, exercising management responsibility and control with regard to all facts of its operations, including the sale of Shapes® franchises" to Plaintiffs. *Id.* ¶ 7-10.

In 2017, Plaintiffs became interested in operating Shapes franchises and commenced discussions with Shapes. *Id.* ¶ 26. Between August and December 2017, Plaintiffs had discussions with several of Shapes representatives, including but not limited to, Defendants Schaefers, Harris. *Id.* In those discussions, Shapes allegedly presented fraudulent information and omitted material facts in its promotional materials and 2017 Franchise Disclosure Document in order to induce Plaintiffs to enter into franchise relationships. *Id.* ¶¶ 1, 27-36. In particular, Plaintiffs allege that Shapes intentionally understated the required initial investment, overstated revenue and membership projections, and misled Plaintiffs as to the resources provided to them, including a sophisticated marketing plan. *Id.* ¶ 3.

On November 21, 2017, Minkoff executed a franchise agreement with Shapes (the "Minkoff Franchise Agreement") to own and operate a Shapes franchise in Concord, California. Compl. ¶ 5, Exh. B, ECF 1-2. On March 13, 2018, Ms. Denise Esguerra-Aguilar executed a franchise agreement with Shapes (the "Esguerra-Aguilar Franchise Agreement"), for a location in San Jose, California. *Id.* ¶ 4, Exh. A, ECF 1-1.[1] On or about April 9, 2018, Ms. Esguerra-Aguilar assigned the franchise agreement to her corporate entity, Plaintiff Esguerra-Aguilar.[2] *Id.* ¶ 4. Plaintiffs allege that they entered into the franchise agreements "in direct reliance" of Shapes' promotional materials and representations. *Id.* ¶ 37. Plaintiffs further allege that they "invested a substantial sum of money into attempting to open and operate their respective Shapes' franchises" and incurred substantial losses. *Id.* ¶ 43.

On January 25, 2020, Plaintiffs filed this lawsuit bringing the following causes of action: (1) Violation of California Franchise Investment Law; (2) Violation of California Unfair Competition

---

[1] The Court refers to the Minkoff Franchise Agreement and the Esguerra-Aguilar Franchise Agreement together as Franchise Agreements.

[2] Ms. Esguerra-Aguilar executed three separate franchise agreements with Shapes, with the first of her three franchises to be located in San Jose, California. Compl. ¶ 4.

1  Law; (3) Fraudulent Inducement; (4) Negligent Misrepresentation; (5) Violation of Florida
2  Franchise Act; and (6) Violation of Florida Deceptive and Unfair Trade Practices Act. *See generally*
3  Compl. Plaintiffs seek the rescission of their underlying Franchise Agreements (and other related
4  agreements), recovery of all monies tendered by Plaintiffs to Shapes, compensatory and treble
5  damages, and attorneys' fees and costs. *See* Compl., Prayer for Relief.

6  Because Plaintiffs' Franchise Agreements with Shapes contain an arbitration clause,
7  Defendants move to stay this case pending the resolution of arbitration. *See* Motion.

## II. REQUEST FOR JUDICIAL NOTICE

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

In support of their Motion, Defendants filed a Request for Judicial Notice of (1) The American Arbitration Association ("AAA") Commercial Arbitration Rules and Mediation Procedures and (2) The National Arbitration Forum ("NAF") Code of Procedure for Resolving Franchise Disputes. ECF 13-1, Exhs. 1-2. Arbitration rules – both AAA and NAF – can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned and therefore are subject to judicial notice. *See Vargas v. Delivery Outsourcing, LLC*, No. 15-CV-03408-JST, 2016 WL 946112, at *2 (N.D. Cal. Mar. 14, 2016) (taking judicial notice of AAA arbitration rules); *Assaad v. Am. Nat. Ins. Co.*, No. C 10-03712, 2010 WL 5416841, at *5 (N.D. Cal. Dec. 23, 2010) (taking judicial notice of the NAF rules). Plaintiffs do not object to Defendants' request. Accordingly, the Court GRANTS Defendants' Request for Judicial Notice.

### III. LEGAL STANDARD

The FAA embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotations and citations omitted). The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Generally, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 846–47 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)). However, certain issues are presumptively reserved for the court. These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citation omitted).

That said, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Because gateway issues of arbitrability would otherwise fall within the province of judicial review, courts "apply a more rigorous standard in determining whether the parties have agreed to arbitrate the question of arbitrability." *Momot*, 652 F.3d at 987-88. "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988 (citation omitted) (alteration in original).

If there is no clear and unmistakable delegation, a district court engages in a limited two-part inquiry to decide the gateway issues of arbitrability: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627–28 (1985).

4

When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999) (interpreting language "arising in connection with" in arbitration clause to "reach[] every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").

Under the FAA, courts are authorized to stay proceedings pending arbitration. 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in [the] suit or proceeding is referable to arbitration under [the pertinent] agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...."). In the Ninth Circuit, courts have discretion to stay or dismiss claims subject to a valid arbitration agreement. *Price v. Petaluma Health Ctr.*, No. 17-CV-05428-HSG, 2019 WL 402314, at *2 (N.D. Cal. Jan. 31, 2019) (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). But, the "preference [is] for staying an action pending arbitration rather than dismissing it." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014).

This Court and other courts in this district routinely stay all claims pending arbitration when requested by a party. *See In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018); *Bell-Sparrow v. SFG*Proschoicebeauty*, No. 18-CV-06707-YGR, 2019 WL 1201835, at *9 (N.D. Cal. Mar. 14, 2019); *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *8 (N.D. Cal. Sept. 11, 2018); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018).

**IV.  DISCUSSION**

Defendants first argue that all issues related to the validity and enforceability of the arbitration agreement are delegated exclusively to the arbitrator and not the Court because the Franchise Agreements incorporate the AAA and NAF rules – and both sets of rules delegate the question of arbitrability to the arbitrator. *See* Motion at 4-5. Second, even if the Court were to reach the enforceability issue of the arbitration clause in the Franchise Agrements, Defendants argue that Plaintiffs' challenges do not have "any rooting in the law." *Id.* at 5.

In opposition, Plaintiffs argue that (1) there was no clear and unmistakable delegation of

5

arbitrability to the arbitrator because the arbitration clause incorporates two different sets of rules (*i.e.*, AAA and NAF), (2) the arbitration clause is unenforceable, and (3) Plaintiffs' claims are outside the arbitration clause. *See generally* Opp'n, ECF 20.

### A. Arbitration Clauses of the Franchise Agreements

The Franchise Agreements each include an identical arbitration clause. In relevant parts, the arbitration clauses provide the following:

> **21.    DISPUTES SUBJECT TO ARBITRATION.**
>
> 21.1  **Agreement to Arbitrate**. … However, if the parties are unable to settle the dispute or controversy, then except as expressly provided to the contrary in Sections 21.12, 21.13 and 21.6 of this Agreement, all disputes and controversies between you and we, including allegations of fraud, misrepresentation and violation of any state or federal laws, rules or regulations, arising under, as a result of, or in connection with this Agreement, the SHAPES® Club or the Franchisee's Club are subject to and will be resolved exclusively by arbitration conducted according to the then current commercial arbitration rules of the American Arbitration Association.
> …
> 21.3  **Demand for Arbitration**. If the dispute alleged by either party has not been corrected, settled or compromised within the time period provided for in Section 21.11, then either party may demand arbitration in accordance with the Code of Procedure of the National Arbitration Forum. Unless agreed otherwise by the parties, three Arbitrators will be selected to hear the matter, one of which must be a retired judge. You and we will each fully perform their obligations under this Agreement during the entire arbitration process.
> …
> 21.5  **Powers of Arbitrators**. The authority of the Arbitrators will be limited to making a finding, judgment, decision and award relating to the interpretation of or adherence to the written provisions of this Agreement.

Esguerra-Aguilar Franchise Agreement at 54-55; Minkoff Franchise Agreement at 54-55.

### B. Delegation of Arbitrability

Defendants contend that all of Plaintiffs' challenges to the validity or enforceability of the arbitration clauses must be submitted to and decided by the arbitrator. *See* Motion at 4. This is because, Defendants argue, the arbitration clauses of the Franchise Agreements incorporate the AAA and NAF arbitration rules, and both sets of rules delegate the question of arbitrability to the arbitrator. *Id.* at 4-5. Plaintiffs respond that there was no "clear and unmistakable" delegation of arbitrability because the arbitration clause references "two different administrative bodies with

1 different rules." Opp'n at 5.

2 In the Ninth Circuit, it is well-settled that incorporation of arbitration rules (such as AAA or
3 NAF rules), "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate
4 arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Interdigital*
5 *Tech. Corp. v. Pegatron Corp.*, No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D. Cal. Jan.
6 20, 2016); *Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *6 (N.D. Cal.
7 Oct. 11, 2019).

8 While Plaintiffs' Franchise Agreements with Shapes are not a model of clarity, they provide
9 that (1) disputes are to be resolved "by arbitration conducted according to the then current
10 commercial arbitration rules of the American Arbitration Association" (§ 21.1) and (2) "either party
11 may demand arbitration in accordance with the Code of Procedure of the National Arbitration
12 Forum" (§ 21.3). And both of those sets of arbitration rules, delegate to the arbitrator disputes over
13 existence, scope, and validity of the arbitration agreement.

14 The AAA rules provide:

15 > The arbitrator shall have the power to rule on his or her own
> jurisdiction, including any objections with respect to the ***existence,***
16 > ***scope, or validity of the arbitration agreement or to the arbitrability***
> ***of any claim or counterclaim***.
17
AAA Commercial Arbitration Rules and Mediation Procedures, R-7(a), Exh. 1 to Request for
18
Judicial Notice at 13, ECF 13-1 (emphasis added).
19
And the NAF rules provide:
20
21 > An Arbitrator shall have the power to rule on all issues, Claims,
> Responses, questions of ***arbitrability***, and objections regarding the
22 > ***existence, scope, and validity of the Arbitration Agreement***
> including all objections relating to jurisdiction, unconscionability,
23 > contract law, and enforceability of the Arbitration Agreement. The
> Arbitrator may rule on objections to jurisdiction of the Arbitrator,
24 > FORUM, or to the arbitrability of a claim or Counterclaim as a
> preliminary matter where appropriate.
25 NAF Code of Procedure for Resolving Franchise Disputes, Part 3(E), Exh. 2 to Request for Judicial
26 Notice at 37, ECF 13-1 (emphasis added). Under either set of rules, the parties clearly and
27 unmistakably delegated all issues related to arbitrability exclusively to the arbitrator, not the Court.
28 Plaintiffs rely on a pre-*Brennan* decision in this district to argue that "the Northern District

United States District Court
Northern District of California

of California has held that the court maintains the right to rule on arbitrability even if there is a reference to the AAA rules in an agreement[.]" Opp'n at 5 (citing *Tompkins v. 23andMe*, Inc., 2014 WL 2903752, at *11). But aside from the Ninth Circuit having now clarified that the incorporation of arbitration rules *are* clear and unmistakable delegation of arbitrability to the arbitrator (*see Brennan*, 796 F.3d at 1130), *Tompkins* involved a click-through consumer agreement with "multiple layers of ambiguity" about which AAA rules [*e.g.*, commercial, consumer, and employment] would govern. *Tompkins*, 2014 WL 2903752, at *10. By contrast, the parties here entered into commercial franchise agreements where two sets of arbitration rules are incorporated and both sets of rules delegate questions of arbitrability to the arbitrator. In short, Plaintiffs' reliance on *Tompkins* is misplaced.

Finally, Plaintiffs ask: "does a AAA arbitrator or a NAF arbitrator decide on the validity of the Arbitration Clause?" Opp'n at 4. But that question is not before the Court. Defendants have only moved to stay the proceeding so Plaintiffs can presumably select one of the arbitration forums (AAA or NAF) to submit their claims to. *See* Motion at 6.

In conclusion, the Court finds that the arbitration clauses of the parties' Franchise Agreements delegated disputes over the existence, scope, and validity of the arbitration agreements exclusively to the arbitrator.

### C. Enforceability and Scope of the Arbitration Agreement

Plaintiffs further argue that (1) the arbitration clauses of their Franchise Agreements are unenforceable and (2) their claims are outside of the scope of scope of the arbitration clause. Opp'n at 5-10. Defendants disagree. Reply at 2-4, ECF 25. Because the Court has determined that all questions regarding the existence, scope, and validity of the arbitration agreements are delegated to the arbitrator, the Court need not address these arguments.

### D. Individual Defendants

The Individual Defendants are not parties to the franchise agreements. Nevertheless, Defendants argue that Individual Defendants have the right to "invoke the arbitration provisions in those Agreements and to demand that Plaintiffs submit their claims against them to arbitration" under two "well-settled doctrines": (1) *agency* – because Plaintiffs' claims against Individual

8

1  Defendants arise out of actions as Shapes' officers and agents and (2) *equitable estoppel* – because
2  Plaintiffs' claims against Individual Defendants are intertwined with the franchise agreements
3  Plaintiffs entered into with Shapes. Motion at 8-9. Plaintiffs do not respond to Defendants' first
4  theory that a non-signatory officer/agent of one of the parties to an arbitration agreement may
5  compel the other party to arbitrate. *See generally*, Opp'n. As for the equitable estoppel theory,
6  Plaintiffs respond that their claims against the Individual Defendants "are not dependent on the
7  Franchise Agreements and are, instead, based upon the false representations that were made by [the
8  Individual Defendants]." Opp'n at 10.

9  The Court is satisfied that Plaintiffs' allegations establish an agency relationship between
10 Individual Defendants and Shapes, enabling the Individual Defendants to demand arbitration. The
11 Ninth Circuit has explained that "nonsignatories of arbitration agreements may be bound by the
12 agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Securities,*
13 *Inc.*, 802 F.2d 1185, 1187 (9th Cir.1986) (citations omitted). "[A]gents of a signatory can compel
14 the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued
15 relate to their behavior as agents or in their capacities as agents [*Letizia*, 802 F.2d at 1188] and (2)
16 the claims against the agents arise out of or relate to the contract containing the arbitration clause
17 [*Britton v. Co-op Banking Grp.*, 4 F.3d 742, 748 (9th Cir. 1993)] (consistent with the language of
18 the arbitration clause)." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832
19 (N.D. Cal. 2007).

20 Here, the Individual Defendants are (or were during the relevant times) high-ranking
21 executives at Shapes. *See* Compl. ¶¶ 7-10. And Plaintiffs specifically allege that each Individual
22 Defendant "acted as one of Shapes® principal officers and directors, exercising management
23 responsibility and control with regard to all facts of its operations, including the sale of Shapes®
24 franchises." *Id.* In addition, Plaintiffs allege that Individual Defendants "purposefully direct[ed]
25 and supervis[ed] the sale of franchises to Plaintiffs in the deceptive and fraudulent manner described
26 [in the Complaint]." *Id.* Accordingly, all of Individual Defendants' allegedly wrongful acts (1)
27 were within their agency responsibilities to Shapes and (2) relate to the sale of the franchises
28 governed by the Franchise Agreements at issue in this case, containing the arbitration clause. The

Court concludes that the arbitration clause is applicable to Individual Defendants. *See Farfan v. SSC Carmichael Operating Co. LP*, No. 18-CV-01472-HSG, 2019 WL 415577, at *5 (N.D. Cal. Feb. 1, 2019) (finding that a non-signatory defendant may enforce an arbitration agreement where an agency relationship is sufficiently alleged).

Individual Defendants may also invoke the arbitration clause under the equitable estoppel theory. "Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, …, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citations and alterations omitted).

Plaintiffs have clearly alleged interdependent conduct (between Shapes and Individual Defendants) related to the Franchise Agreements. Plaintiffs allege that Individual Defendants "materially aided and/or actively participated with Shapes® in the commission of such wrongful conduct by purposefully directing and supervising the sale of franchises to Plaintiffs in the deceptive and fraudulent manner described [in the Complaint]." Compl. ¶¶ 7-10. Because the claims against Shapes and Individual Defendants are so intertwined and connected with the sale of the franchises (and hence, the Franchise Agreements), denying a stay of the claims against Individual Defendants would result in duplicative litigation which would undermine the efficiency of arbitration.

## V. ORDER

For the foregoing reasons, the Court GRANTS Defendants' Motion to Stay Pending Arbitration at ECF 13. Plaintiffs must submit their claims for arbitration within 90 days of this Order.

**IT IS SO ORDERED.**

Dated: July 9, 2020

_____
BETH LABSON FREEMAN
United States District Judge